IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CSAA GENERAL INSURANCE )
COMPANY, )
 )
    Plaintiff, )
 )
v. ) Case No. 24-CV-507-D
 )
JAMES R. BRANUM and )
MARTHA L. BRANUM, )
 )
    Defendant. )

# ORDER

Before the Court is Plaintiff CSAA General Insurance Company's Motion for Summary Judgment [Doc. No. 14]. The motion seeks judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the motion is denied.

## FACTUAL BACKGROUND[1]

On November 27, 2017, James Branum ("Mr. Branum") was involved in an automobile accident with Charles Phillip Garriott ("Mr. Garriott"). Mr. Garriott was at fault. Mr. Branum sustained injuries.

Farmers Insurance ("Farmers") insured Mr. Garriott under a liability policy with a $500,000 limit. Defendants herein filed an action in Oklahoma County District Court

---

[1] This statement includes material facts that are supported by the record and not opposed in the manner required by FED. R. CIV. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to FED. R. CIV. P. 56(e)(2) and LCvR56.1(e). Both parties' statements of fact, at times, drift into legal argument. To the extent legal conclusions or arguments are presented as purported undisputed facts, they are disregarded.

against Mr. Garriott and Farmers ("the Tort Case").

On December 17, 2019, Defendants Mr. Branum and his wife Martha Branum put their insurer, Plaintiff CSAA General Insurance Company ("CSAA"), on notice that they were requesting underinsured motorist ("UM") coverage benefits.

In September 2020, Defendants forwarded medical and billing information related to Mr. Branum's injuries to CSAA. Defendants again requested payment of UM benefits and asked for a waiver of CSAA's subrogation right.

In October, Defendants sent CSAA a report authored by a Dr. Shawn Smith and Lon Huff. The report set forth the extent of Mr. Branum's alleged injuries and calculated damages at $1,972,852.40.

In August 2022, Defendants informed CSAA that they had settled the Tort Case with Mr. Garriott and Farmers for $100,000. On June 28, 2023, and in a corrected letter dated July 5, 2023,[2] Defendants demanded CSAA tender $250,000 to Defendants—the limit of their UM benefits under the relevant policy.[3] The letter further stated it was written in compliance with Okla. Stat. tit. 36, § 3636,[4] and that Mr. Branum's medical bills arising from his injuries amounted to $140,785.67 at that time.

In April 2024, Defendants emailed and called CSAA asking if UM benefits would

---

[2] Defendants June letter misstated the tortfeasor's policy limit, alleging Mr. Garriott had paid $100,000 of a $100,000 policy. The July letter corrected the error.
[3] Defendants had initially demanded $250,000 for James Branum's injuries and an additional $250,000 for Martha Branum's loss of consortium. Defendants have since conceded that Martha Branum's claim is derivative, and Defendants can only recover, collectively, $250,000 under the UM policy at issue.
[4] Okla. Stat. tit. 36, § 3636(F) requires insureds to provide notice to UM carriers in the event of "tentative" settlements with tortfeasors' insurers.

2

be paid. A CSAA secretary orally informed Defendants that the claim was denied. Defendants then requested the denial be set out in writing.

In May 2024, CSAA filed the instant Declaratory Judgment action asking the Court to adjudicate any alleged UM benefits owed to Defendants.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Anderson*, 477 U.S. at 251-52. The Rule 56 standard is applicable to actions for declaratory judgment. *U.S. v. Gammache*, 713 F.2d 588, 594 (10th Cir. 1983).

## ANALYSIS

To recover UM benefits under Oklahoma law, a tortfeasor's liability limit must be "less than the amount of the claim of the person or persons" injured. Okla. Stat. tit. 36, § 3636(C).

Plaintiff argues Defendants' claim is less than Mr. Garriott's liability limit as a matter of law. Plaintiff cites *Porter v. State Farm Mut. Auto. Ins. Co.*, 2010 OK CIV APP 8. There, the Oklahoma Court of Civil Appeals held "The act of accepting less than the liability-policy limit[] and releasing [the tortfeasor] from further liability establishes that the claim does not exceed the available liability coverage." *Id.* at ¶ 9. Accordingly, Plaintiff argues that the tortfeasor could not be underinsured because the Tort Case settled for 20% of Mr. Garriott's available limit.

Defendants disagree, citing *Madrid v. State Farm Mut. Auto. Ins. Co.*, 2020 OK CIV APP 22. In *Madrid*, a different division of the same court held that "a settlement and release for less than [a tortfeasor's] policy limit[] is not an absolute forfeiture or an unassailable bar to recovery." *Id.* ¶ 1. In that case, the injured party produced evidence that her claim exceeded the tortfeasor's liability limit. *Id.* ¶ 13. Moreover, it was uncontested that she had settled with the tortfeasor for less than the tortfeasor's liability limit. *Id.* ¶ 4. The appellate court determined that the injured party's evidence established a dispute of material fact as to the claim's value and reversed the trial court's grant of summary judgment for the UM insurer. *Id.* ¶ 16. Defendants here argue the insurer's summary judgment motion should be

4

denied for the same reason.[5]

Both *Porter* and *Madrid* are nonbinding. Okla. Stat. tit. 20, § 30.5 provides "No opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter." Neither case has received such approval.

In *Sexton v. Continental Cas. Co.*, 1991 OK 84, ¶ 9, the Supreme Court of Oklahoma "decline[d] to address" whether a settlement for less than a tortfeasor's liability limit precludes UM coverage. The parties do not cite, and the Court has not found, any binding precedent settling the issue.

What authority does exist seems to suggest that settling for less than a tortfeasor's liability limit is not determinative as to the amount of an injured party's claim. In *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, the Oklahoma Supreme Court held that a UM insurer is "not responsible for [any] 'gap' between the amount of settlement" in an underlying tort case "and the liability limit of the [tortfeasor's] policy." *Id.*, ¶ 28. The supreme court seemed to acknowledge that such a "gap"—resulting from settling for less than an at-fault party's liability limit—could exist and would not necessarily preclude UM recovery.

The Court is therefore persuaded that settling for less than a tortfeasor's liability

---

[5] Plaintiff argues *Madrid* should be cabined to situations in which the settlement in an underlying tort action is consonant with the at-fault party's liability limit. Plaintiff cites the *Madrid* case's facts whereby the injured party settled for $10,000 less than the tortfeasor's liability limit because retaining the expert witnesses needed to obtain that limit at trial would have cost more than $10,000. *See Madrid*, 2020 OK CIV APP 22, ¶ 4.

limit is not necessarily determinative of the amount of an injured party's claim. As Judge Dowdell of the Northern District of Oklahoma wrote in *Nsien v. Country Mut. Ins. Co.*, No. 16-CV-530-JED-JFJ, 2019 WL 573424, at *3 (N.D. Okla. Feb. 12, 2019), the lack of clear Oklahoma law settling this issue suggests an injured party's "settlement with [a tortfeasor] for less than [the tortfeasor's] liability limit[] is not conclusive as to whether [the injured party's] claim exceede[s] the available liability coverage…."

Plaintiff argues that *Porter v. State Farm Mut. Auto. Ins. Co.*, 2010 OK CIV APP 8 should be binding because, otherwise, injured parties could settle with liability insurers for "any amount" and then, through "mere assertion" that the injured party's claim is greater, maintain a claim for UM benefits. Pl.'s Mot. Summ. J. at 9.

Although the Court agrees that a UM insurer is responsible to investigate the amount of an insured party's claim according to a "reasonableness standard" (*see Klintworth v. Valley Forge Ins. Co.*, No. 20-CV-0178-CVE-CDL, 2021 WL 816730 (N.D. Okla. Mar. 3, 2021) (citing *Buzzard*, 1991 OK 127, ¶ 48)), and mere assertion is not likely enough, the Court disagrees with Plaintiff's contention that "mere assertion" is all that happened here. In October 2020, almost two years before Defendants settled the Tort Case, Defendants sent Plaintiff a detailed report setting forth the alleged extent of Mr. Branum's injuries. That report purported to indicate that damages from the underlying collision significantly exceeded the tortfeasor's liability limit.

At this stage in litigation, the Court has no opinion about the accuracy of Defendants' October 2020 report. Drawing all reasonable inferences in the light most favorable to the nonmovant, however, the Court acknowledges that Defendants did more

6

than "mere[ly] assert[]" that their claim exceeded the available liability limit. They forwarded evidence of their claim's alleged value to Plaintiff. Having submitted that evidence as part of the summary judgment record, the Court finds there are disputes of material fact regarding the value of Defendants' claim that preclude summary judgment.

Plaintiff makes an additional argument that summary judgment should be granted because Defendants destroyed Plaintiff's subrogation right by settling the Tort Case and releasing the tortfeasor. Plaintiff cites *Porter v. MFA Mut. Ins. Co.*, 1982 OK 23, ¶ 14 ("*MFA*"). There, the Oklahoma Supreme Court held, "as a general rule[,] an insured who deprives [its UM] insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides [the UM] insurer with a complete defense to an action on the policy." *Id.*

*MFA* does not set forth the whole of Oklahoma subrogation law. Rather, "the initial responsibility to act to protect subrogated rights rests upon the insurer." *Sexton*, 1991 OK 84, ¶ 17 (citations omitted). An insurer "must aid its insured in the preservation of" that right. *Id.* (internal quotation marks omitted). Furthermore, the "general rule" announced in *Porter* is not absolute. *See Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1222 (10th Cir. 2001) (describing four instances in which prior settlement with a tortfeasor did not preclude UM coverage). Finally, Okla. Stat. tit. 36, § 3636(F) requires insureds to provide notice of tentative settlements in underlying tort actions to UM insurers, but "an insurer may waive its right to subrogation or be estopped to assert it due to its conduct." *Strong v. Hanover Ins. Co.*, 2005 OK CIV APP 9 (citing *Buzzard*, 1991 OK 127, ¶¶ 34-42).

7

The Court is persuaded that the current situation is similar to *Strong*, 2005 OK CIV APP 9. There, an injured party notified his UM insurer about a lawsuit against an at-fault party and later informed his insurer that a mediation was scheduled in the underlying case. *Id.* ¶ 29. The insured did not, however, follow the exact letter of the notice-of-settlement provisions provided under § 3636(F).[6] The Oklahoma Court of Civil Appeals, interpreting § 3636, held that the insured's failure to precisely follow the notice requirements was not a bar to recovery. *Id.* ¶ 28. Instead, it was the insurer's responsibility to aid its insured in preserving its subrogation right after receiving notice of the underlying case. *Id.* ¶ 29. The insurer was therefore estopped from later arguing that its insured's settlement provided a complete defense to any action on the UM policy. *Id.* ¶¶ 33-35.

Here, Defendants first put Plaintiff on notice of their request for UM benefits in December 2019. They later forwarded all related medical and billing information and requested that Plaintiff waive subrogation. Almost two years before the Tort Case settled, Defendants sent a report documenting Mr. Branum's pecuniary losses and medical injuries. That report indicated that Mr. Branum's injuries may have significantly exceeded the tortfeasor's liability limit. CSAA has not put forward any evidence that it acted to protect its subrogation right despite all of these notices. Based on the record before the Court, there are disputes of material fact that preclude summary judgment on this issue in favor of Plaintiff.

---

[6] *Strong* discusses a previous version of § 3636 whereby the notice-of-settlement provisions were contained in § 3636(E) rather than their current location. *Compare* Okla. Stat. tit. 36, § 3636(E) (eff. July 1, 2001); Okla. Stat. tit. 36, § 3636(F) (eff. Nov. 1, 2014).

8

**IT IS THEREFORE ORDERED** that CSAA's Motion for Summary Judgment [Doc. No. 14] is **DENIED**. Because CSAA's Motion to Stay Defendants' Counterclaim [Doc. No. 28] is premised on staying litigation to provide this Court with sufficient time to rule on the Motion for Summary Judgment, it is **DENIED** as moot.

**IT IS SO ORDERED** this 19th day of December, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge